

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00002-CR
_____

JUSTIN VELASQUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law #2
Lubbock County, Texas
Trial Court No. 2010-463,378, Honorable Drue Farmer, Presiding

July 2, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Justin Velasquez, was convicted by a jury of driving while intoxicated, a Class B misdemeanor,[1] and placed on community supervision for fifteen months with conditions. By two points of error, Appellant asserts the trial court erred by (1) failing to

---

[1]See TEX. PENAL CODE ANN. § 49.04 (WEST SUPP. 2012).

give the jury a Rule 38.23(a)[2] instruction and (2) denying his motion to suppress. We affirm.

## Background

In November 2010, an information was filed alleging that, on or about October 23, 2010, Appellant operated a motor vehicle in a public place while intoxicated and knowingly had an open container of an alcoholic beverage, to-wit: beer, in his immediate possession. In September 2011, Appellant filed a motion to suppress all physical evidence and any written or oral statements.

At trial, Trooper Byron Ivey[3] testified that, on October 23, 2010, at 11:52 p.m. on a Saturday night, he was driving northbound on US 87 toward Lubbock when he observed Appellant's pickup weaving within his lane, i.e., moving from the center stripe to the fog line. Based upon his training and experience, he suspected its driver was intoxicated and began watching the pickup for additional signs of impairment or potential traffic violations. He next observed the pickup's right-side tires drive over the fog line onto the improved shoulder several times. He filmed Appellant's pickup with his in-car camera and activated his overhead lights when he observed Appellant again drive onto the improved shoulder. In the process of exiting the highway, Appellant drove outside his lane onto a white-striped area before exiting onto 98th Street and

---

[2]*See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (WEST 2005). Throughout the remainder of this opinion, provisions of the Texas Code of Criminal Procedure will be cited as "article _____."

[3]Trooper Ivey has served as a state trooper for approximately four years. During that time, he attended six months training which included three to four weeks of training on standardized field sobriety tests, detecting intoxicated motorists, and assessing how alcohol affects the human body. He has made 175 driving while intoxicated arrests.

coming to a stop in a parking lot. After administering standardized field sobriety tests, Trooper Ivey placed Appellant under arrest for driving while intoxicated. He testified he stopped Appellant because he was weaving within his lane and because he crossed the fog line onto the improved shoulder at a time when a lot of young kids were usually out drinking—nearly midnight on a Saturday night. He also testified that Appellant refused his request for a breath or blood sample on the night in question.

Following trial, a jury found Appellant guilty of driving while intoxicated. The trial court subsequently issued its judgment sentencing Appellant to 120 days in the county jail, a $500.00 fine, and $452.10 in court costs.[4] The trial court then suspended the sentence and placed Appellant on community supervision for fifteen months with conditions. This appeal followed.

## I. Article 38.23(a) Jury Instruction

Appellant asserts he was entitled to a jury instruction under article 38.23(a) because a fact issue existed at trial regarding whether he crossed the fog line prior to being stopped. Specifically, he relies on cross-examination testimony wherein Trooper Ivey agreed Appellant did not "straddle" the fog line and the videotape showing Appellant's pickup before the stop.

Article 38.23(a) prohibits the use of any evidence obtained by a law enforcement officer in violation of a state or federal law against an accused on trial in any criminal case and provides that, "where the legal evidence raises an issue hereunder, the jury

---

[4]The Court found the enhancement paragraph regarding the open alcohol container not true.

shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." An article 38.23 jury instruction is mandatory only when there is a fact issue concerning how the evidence was obtained; as in this instance, the validity of the traffic stop. *See Pickens v. State,* 165 S.W.3d 675, 680 (Tex.Crim. App. 2005); *Doyle v. State,* 265 S.W.3d 28, 33 (Tex.App.—Houston [1st Dist.] 2008, pet. ref'd) (citing *Beasley v. State,* 810 S.W.2d 838, 842 (Tex.App.—Fort Worth 1991, pet. ref'd)). If there is no factual issue as to how the evidence was obtained, the only issue is an issue of law, which is not for the jury to decide. *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex.Crim.App. 2007).

To be entitled to the submission of an article 38.23(a) jury instruction, a defendant must establish: (1) the evidence heard by the jury raises a fact issue; (2) the evidence on that fact is affirmatively contested; and (3) the contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State,* 242 S.W.3d 504, 510 (Tex.Crim.App. 2007).

It is well-established that a law enforcement officer may lawfully stop an individual for a traffic violation; *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000), and, even in the absence of a traffic violation, an officer is justified in stopping a driver based on reasonable suspicion of driving while intoxicated. *See James v. State*, 102 S.W.3d 162, 172 (Tex.App.—Fort Worth 2003, pet. ref'd); *Cook v. State*, 63 S.W.3d 924, 929 (Tex.App.—Houston [14th Dist.] 2002, pet. ref'd).[5] *See also McQuarters v.*

---

[5]We review the legal question of whether the totality of circumstances is sufficient to support an officer's reasonable suspicion *de novo*. *Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex.Crim.App. 2004). Thus,

4

*State*, 58 S.W.3d 250, 255 (Tex.App.—Fort Worth 2001, pet. ref'd) (a driver may be stopped if the officer has a reasonable suspicion that a traffic violation is in progress or has been committed).

Here, Trooper Ivey noticed Appellant weaving within his lane late on a Saturday night, a time when others were customarily out drinking, and stopped him for crossing the fog line onto the improved shoulder. *See* TEX. TRANSP. CODE ANN. § 545.057(a)(1)-(7) (WEST 2011).[6] Based on Trooper Ivey's testimony and having viewed the videotape, we find that Trooper Ivey had a reasonable suspicion and/or probable cause to stop Appellant. *See Curtis v. State,* 238 S.W.3d 376, 381 (Tex.Crim.App. 2007) (holding officer's extensive experience in detecting intoxicated drivers, coupled with his training to view weaving specifically as an indication of intoxicated driving, established reasonable suspicion to justify an investigative detention when he observed car weaving in and out of his lane several times over a short distance late at night); *Stone v. State,*

---

where a defendant does not question or dispute the totality of the evidence on which the officer relies in making the stop, but merely certain circumstances as they existed that authorized the stop, the defendant is not entitled to an instruction. *Cate v. State,* 124 S.W.3d 922, 928 (Tex.App.—Amarillo 2004, pet. ref'd).

[6]A driver may drive on an improved shoulder to the right of the main traveled portion of a roadway *if* such operation is necessary and may be done safely but only (1) to stop, stand, or park; (2) to accelerate before entering the main traveled lane of traffic; (3) to decelerate before making a right turn; (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled or preparing to make a left turn; (5) to allow another vehicle traveling faster to pass; (6) as permitted or required by an official traffic-control device; or (7) to avoid a collision. *See* TEX. TRANSP. CODE ANN. § 545.058(a)(1)-(7) (WEST 2011) (emphasis added). That the tires of the vehicle are only on the improved shoulder for a few seconds does not affect section 545.058(a)'s application. *See State v. Hanath*, No. 01-08-00452-CR, 2010 Tex. App. LEXIS 8011, at *13 n.4 (Tex.App.—Houston [1st Dist.] Sept. 30, 2010, no pet.) (mem. op., not designated for publication). *See also Gunderson v. State,* No. 05-09-00731-CR, 2010 Tex. App. LEXIS 4945, at *7-8 (Tex.App.—Dallas June 30, 2010, no pet.) (mem. op., not designated for publication) (simply crossing fog line for approximately five seconds before returning to driving lane is a violation); *Tex. Dep't of Pub. Safety v. Skinner*, No. 03-07-00679-CV, 2009 Tex. App. LEXIS 1004, at *7 (Tex.App.—Austin Feb. 12, 2009, no pet.( (mem. op., not designated for publication) (section 545.058 only requires that the vehicle drive, not substantially drive, on the unimproved shoulder). Further, in the absence of evidence by the defendant establishing necessity or any statutory exemption, the State is not required to negate necessity or any statutory exemption in order to establish reasonable suspicion. *State v. Dietiker*, 345 S.W.3d 426, 431 (Tex.App.—Waco 2011, no pet.).

5

No. 05-08-1579-CR, 2009 Tex. App. LEXIS 4251, at *5 (Tex.App.—Dallas June 16, 2009, no pet.) (mem. op., not designated for publication) (holding trained officer had reasonable suspicion to stop vehicle for suspicion of driving while intoxicated when he observed car touch or cross center line and fog line five or six times in a relatively short distance at night); *McClish v. State,* No. 07-06-0188-CR, 2006 Tex. App. LEXIS 7927, at *1-2, 5 (Tex.App.—Amarillo Sept. 5, 2006, no pet.) (mem. op., not designated for publication) (trained officer had probable cause to stop driver after he observed 1/3 to 1/2 of van cross fog line onto improved shoulder); *State v. Lockhart,* No. 07-04-0304-CR, 2005 Tex. App. LEXIS 6159, at *9 (Tex.App.—Amarillo Aug. 2, 2005, no pet.) (mem. op., not designated for publication) (officer has probable cause to stop a vehicle when he observes defendant cross the fog line and drive partially on the shoulder for a few seconds).

Appellant asserts that, because Trooper Ivey agreed on cross-examination that Appellant was not "straddling" the fog line, Trooper Ivey contradicted his own testimony on direct and cross-examination that he observed a wheel of the pickup cross the fog line and drive onto the improved shoulder. Appellant also asserts a fact issue is raised because the videotape does not show Appellant crossing the fog line before the traffic stop. We do not agree with Appellant's conclusion that this testimony affirmatively contests the factual basis of Trooper Ivey's conclusion that he had reasonable suspicion to effect a traffic stop based on suspicion of driving while intoxicated.

In order for there to be a conflict in the evidence that raises a disputed fact, there must be some affirmative evidence in the record that puts the existence of that fact in question. *Madden,* 242 S.W.3d at 513. *See Oursbourn v. State,* 259 S.W.3d 159, 177

(Tex.Crim.App. 2008) ("Th[e] factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument.") Trooper Ivey's agreement with Appellant's cross-examination question does not represent affirmative evidence contradicting his earlier testimony. "Straddle" is defined as "the act of standing, sitting, or walking, with the legs wide apart" or to "favor or seem to favor two apparently opposite sides." *Webster's Third New International Dictionary* 2253-54 (4th Ed. 1976). These definitions do not affirmatively contradict Trooper Ivey's testimony that Appellant crossed the fog line, albeit temporarily. Neither Trooper Ivey's testimony nor the videotape indicate Appellant seemed to favor *both* his lane of traffic *and* the improved shoulder. Rather, the videotape shows Appellant crossed over onto the improved shoulder for only a few seconds each time before returning to his lane of traffic and continuing to weave. Thus, while Appellant's argument may raise a semantic issue, it does not raise an issue of fact.

Furthermore, Trooper Ivey relied on a multitude of factors to reach his conclusion that reasonable suspicion existed to stop Appellant's vehicle for suspicion of criminal activity, to-wit: driving while intoxicated. Based on the totality of the evidence, where Trooper Ivey had other factual basis for forming his conclusion that reasonable suspicion of criminal activity existed, the fact that a dispute might exist as to whether Appellant crossed the fog line would not be crucial to a legal finding of reasonable suspicion and would, therefore, be immaterial to the lawfulness of the challenged conduct in obtaining the evidence. *Madden*, 242 S.W.3d at 517.

Accordingly, we agree with the trial court that Appellant was not entitled to an article 38.23(a) jury instruction concerning whether Trooper Ivey had reasonable

7

suspicion or probable cause to stop Appellant. *See Rose v. State,* 470 S.W.2d 198, 200 (Tex.Crim.App. 1971) (holding no jury issue raised when no witness was called by defendant to controvert officer's testimony regarding the events and circumstances at time of arrest, and cross-examination did not raise fact issue on right to arrest). Appellant's first point of error is overruled.

## II.  Motion to Suppress

Appellant next asserts he was entitled to suppression of all physical evidence and his written or oral statements because Trooper Ivey illegally stopped his pickup. He asserts the videotape of his traffic stop does not indicate that he violated section 545.058(a) of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 545.058(a) (WEST 2011). Again, we disagree.

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). To the extent the trial court's determination of historical facts is based on a videotape of a traffic stop admitted into evidence, the court is also entitled to deference with regard to those factual determinations as well, but only if supported by the record. *Montanez v. State,* 195 S.W.3d 101, 109 (Tex.Crim.App. 2006). *But cf. Carmouche v. State,* 10 S.W.3d 323, 332 (Tex.Crim.App. 2000) (noting bifurcated standard of review that requires "almost total deference to a trial court's

8

determination of historical facts that the record supports" but declining to give that level of deference in that case because "the videotape present[ed] indisputable visual evidence contradicting essential portions of [the officer's] testimony"). Thus, we give almost total deference to the trial court's factual determinations unless the video recording indisputably contradicts the trial court's findings. *Id. See State v. Houghton,* 384 S.W.3d 441, 446 (Tex.App.—Fort Worth 2012, no pet.). Further, when the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006).

We have viewed the videotape and it depicts Appellant driving on the improved shoulder multiple times. In addition, it is undisputed that the record before the trial court contains no evidence that Appellant's driving on the improved shoulder was necessary or was for one of the specific purposes authorized by statute. *See, e.g., Tyler v. State,* 161 S.W.3d 745, 750 (Tex.App.—Fort Worth 2005, no pet.) (finding probable cause to stop appellant for driving on improved shoulder where record contained no evidence that driving on shoulder was necessary under any statutory exception); *Martinez v. State*, 29 S.W.3d 609, 611-12 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd) (holding trial court could have found reasonable suspicion for stop based on statutory violation for driving on shoulder where trooper testified driver drifted partially onto shoulder with right tires before pulling back into his lane of traffic). Accordingly, we find the trial court did not abuse its discretion by denying Appellant's motions to suppress. Appellant's second point of error is overruled.

**Conclusion**

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.